ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

        - v. -                      :

                                    :        **INFORMATION**

HECTOR MAY,                         :        18 Cr. 880

                Defendant.          :

- - - - - - - - - - - - - - - - - -X

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

The United States Attorney Charges:

### Relevant Persons and Entities

1.    Since in or about 1982, HECTOR MAY, the
defendant, has been President of Executive Compensation
Planners, Inc. ("ECP"), a registered investment adviser and
financial planning firm located in New City, New York.  Through
ECP, HECTOR MAY, the defendant, provided financial advisory
services to numerous clients.

2.    Since in or about 1994, HECTOR MAY, the
defendant, has also been a registered representative of a broker
dealer ("Broker Dealer-1").  In its role as a broker dealer,
Broker Dealer-1 facilitates the buying and selling of securities
for clients of Broker Dealer-1's registered representatives,
including clients of MAY.  To that end, Broker Dealer-1 and
associated clearing firms maintained securities accounts for

ECP's clients and, through those accounts, held ECP's clients' money, executed their securities trades, produced account statements reflecting activity in the clients' accounts, and forwarded these account statements to ECP's clients.

3.      Since in or about 1993, ECP had an employee whose positions included "comptroller" and "compliance specialist" ("CC-1").

## The Scheme To Defraud

4.      During the relevant time period, HECTOR MAY, the defendant, and CC-1 perpetrated a scheme to defraud more than 15 ECP clients (the "Victims") by inducing them to turn over $11,500,000 to ECP, much of which came from their securities accounts with Broker Dealer-1, under the false pretense that HECTOR MAY, the defendant, was going to use the money to purchase bonds or other investments on their behalf.  Upon receiving the Victims' money, HECTOR MAY, the defendant, and CC-1 did not invest it as represented, but rather used the money to pay for their own personal and business expenses and to make payments to certain Victims in order to perpetuate and conceal the fraud.

## Means and Methods of the Conspiracy

5.      Among the means and methods by which HECTOR MAY, the defendant, and CC-1 would and did carry out the conspiracy were the following:

      a.   In order to obtain money from the Victims' securities accounts with Broker Dealer-1, MAY advised the Victims, among other things, that they should use money from those accounts to have ECP, rather than Broker Dealer-1, purchase bonds on their behalf. He further represented that by purchasing bonds through ECP directly, the Victims could avoid transaction fees.

      b.   Because MAY lacked the authority to withdraw money directly from the Victims' accounts with Broker Dealer-1, he persuaded the Victims to withdraw the money themselves and to forward that money to an ECP "custodial" account (the "ECP Custodial Account"), so that he could use the money to purchase bonds on their behalf.

      c.   With the assistance of CC-1, MAY guided the Victims first, to withdraw their money from their Broker Dealer-1 accounts, and second, to send that money to the ECP Custodial Account by wire transfer or check. At times, MAY falsely represented that the money being withdrawn from Victims' Broker Dealer-1 accounts were the proceeds of prior bond purchases MAY had made.

      d.   After the Victims sent their money to the ECP Custodial Account, MAY did not use the money to purchase bonds. Instead, MAY and CC-1 spent the money on business

3

expenses, personal expenses and to make payments to certain Victims in order to perpetuate the scheme and conceal the fraud.

e.    To perpetuate the scheme and conceal the fraud, MAY and CC-1 used money provided by some Victims to make payments to other Victims.  Specifically, in some cases, MAY used Victims' funds to make purported bond interest payments to other Victims. In other cases, MAY used Victims' funds to make payments to other Victims who wished to withdraw funds from their accounts.

f.    MAY and CC-1 also created phony "consolidated" account statements that they issued through ECP and sent to the Victims.  These "consolidated" account statements purported to reflect the Victims' total portfolio balances and included the names of bonds MAY falsely represented that he purchased for the Victims and the amount of interest the Victims were supposedly earning on the bonds.

g.    In order to create the phony consolidated account statements, MAY provided CC-1 with bond names and false interest earnings and CC-1 created ECP computerized account statements and had them distributed to the Victims.

h.    To keep track of the money that the co-conspirators were taking from the Victims, CC-1 processed the Victims' payments for the purported bonds, entered them in a computerized accounting program and, through that program, kept

4

track of how MAY and CC-1 received and spent the Victims' stolen money.

        i.    In this way, from in or about the late 1990's through on or about March 9, 2018, MAY and CC-1 induced Victims to forward them over $11,500,000.

### THE CONSPIRACY

        6.    From in or about the late 1990's through on or about March 9, 2018, in the Southern District of New York and elsewhere, HECTOR MAY, the defendant, and CC-1, unlawfully, willfully and knowingly, combined, conspired, confederated and agreed, together and with each other, to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

        7.    It was a part and object of the conspiracy that HECTOR MAY, the defendant, and CC-1, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**OVERT ACTS**

8.    In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about July 26, 2001, a victim ("Victim-1") provided ECP with $201,000, which was deposited into the ECP Custodial Account.

b.    On or about January 16, 2004, HECTOR MAY, the defendant, sent Victim-1, who resides in Connecticut, an email in which he described a bond he recommended purchasing and instructed Victim-1 to issue payment in the amount of $50,000 payable to the ECP Custodial Account.

c.    On or about the same day, Victim-1 sent MAY an email informing him that the check was in the mail.

d.    On or about January 26, 2004, a $50,000 check, attributed to Victim-1 in ECP's records, was deposited into the ECP Custodial Account.

e.    On or about June 29, 2006, MAY sent Victim-1 an email informing Victim-1 that $100,000 was wired to Victim-1's checking account representing settlement of a bond purchased in 2003 and that MAY had renewed the bond for another three years.  MAY further instructed Victim-1 to send a check payable to the ECP Custodial Account.

f.   On or about July 7, 2006, a $100,000 check, attributed to Victim-1 in ECP's records, was deposited into the ECP Custodial Account.

g.   On or about September 4, 2007, MAY sent Victim-1 an email informing Victim-1 that a three-year bond for $75,000 had matured and proceeds were wired to Victim-1's account.  MAY further informed Victim-1 that he purchased a new bond and he instructed Victim-1 to issue a $75,000 check payable to the ECP Custodial Account.

h.   On or about the same day, Victim-1 sent an email to MAY informing him that the "check was in the mail for bond."

i.   On or about September 10, 2007, a $75,000 check, attributed to Victim-1 in ECP's records, was deposited into the ECP Custodial Account.

j.   In or about December 2016, a Victim ("Victim-2") requested a withdrawal of $100,000 of Victim-2's funds from ECP.

k.   On or about December 15, 2015, the balance in the ECP Custodial Account was less than $15,000.   CC-1 emailed two wire request forms to a representative of a Victim ("Victim-3"), which would authorize the transfer of a total of $55,000 from Broker Dealer-1 to Victim-2's account.  CC-1 instructed that representative to have representatives of

7

Victim-3 sign the forms and return them to ECP. Representatives of Victim-3 signed and returned both forms on or about December 19, 2016.

l.   On or about December 21, 2016, MAY emailed a representative of Victim-3 and advised, among other things, that $55,000 would be used to purchase two bonds and he instructed Victim-2 to wire $55,000 to the ECP Custodial Account.

m.   On or about December 21, 2016, MAY emailed another Victim ("Victim-4"), advised he was purchasing a bond, and instructed Victim-4 to wire $40,000 to the ECP Custodial account.

n.   On or about December 21, 2016, CC-1 transferred $38,000 of funds he/she maintained in his/her own account at Broker Dealer-1 into the ECP Custodial Account.

o.   On or about December 23, 2016, Victim-3 transferred $55,000 to the ECP Custodial Account as instructed by MAY.

p.   On or about December 23, 2016, following the receipt of Victim-3's funds and the ECP Custodial Account balance exceeding $100,000, MAY and CC-1 transferred $100,000 to Victim-2, bringing the balance in the ECP Custodial account back down to less than $5,000.

q.   On or about December 27, 2018, CC-1 deposited a $40,000 check from Victim-4 denoted as "Bond" in the memo line of the check.

r.   On or about January 26, 2017, MAY emailed a fifth victim ("Victim-5"), who was in Florida.  MAY told Victim-5 that Victim-5 would be receiving $30,000 and he instructed Victim-5 to wire the money to the ECP Custodial account.

s.   On or about January 27, 2017, Victim-5's money was wire transferred from an account at a bank in Florida to the ECP Custodial account in New York.

t.   On or about August 7, 2017, MAY emailed a sixth Victim ("Victim-6") and advised, among other things, that he "repositioned" Victim-6's portfolio, moved approximately $50,000 to cash and, pursuant to Victim-6's agreement, he would be purchasing bonds with that $50,000.  He instructed Victim-6 that when Victim-6 received the $50,000, Victim-6 should wire the money to the ECP Custodial account, where it would be used to purchase the bonds.

u.   On or about August 9, 2017, CC-1 sent Victim-6 an email, attaching a wire request form and instructing Victim-6 to sign and date the form.

v.   On or about August 15, 2017, MAY emailed Victim-6 and advised that he had purchased two $25,000 bonds and instructed Victim-6 to wire $50,000 to the ECP Custodial

account.  The email advised Victim-6 to call CC-1 if Victim-6

had "any question."

       w.   On or about August 21, 2017, a $50,000 check

from Victim-6 was deposited to the ECP Custodial account.

(Title 18, United States Code, Section 1349).

## COUNT TWO
(Investment Adviser Fraud)

    The United States Attorney further charges:

       9.   The allegations contained in paragraphs 1 through

8 of this Information are repeated and realleged as though fully

set forth herein.

       10.  From in or about the late 1990's through on or

about March 9, 2018, in the Southern District of New York and

elsewhere, HECTOR MAY, the defendant, acting as investment

adviser with respect to clients and prospective clients of ECP,

unlawfully, willfully, and knowingly, by the use of the mails

and means and instrumentalities of interstate commerce, directly

and indirectly, did: (a) employ devices, schemes, and artifices

to defraud clients and prospective clients; (b) engage in

transactions, practices, and courses of business which operated

as a fraud and deceit upon clients and prospective clients; and

(c) engage in acts, practices, and courses of business that were

fraudulent, deceptive and manipulative.

(Title 15, United States Code, Sections 80b-6 and 80b-17).

### Forfeiture Allegation

11.  As a result of committing the offense alleged in Count One of this Information, HECTOR MAY, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including, but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained, and the following specific property:

        a) Any and all funds in account number 015062762365 held in the name of ECP, Inc. located at JPMorgan Chase Bank, N.A.;

        b) Any and all funds in account number 0310064762765 held in the name of ECP, Inc. located at JPMorgan Chase Bank, N.A.;

        c) Any and all funds in account number 6809196613 held in the name of Sonia May located at JPMorgan Chase Bank, N.A.;

        d) Any and all funds in account number 93631142670 held in the name of Sonia May located at JPMorgan Chase Bank, N.A.;

        e) Any and all funds in account number 986666 held in the name of Executive Compensation Planners, Inc. located at Citibank Bank, NA;

f) Any and all funds in account number 16072324 held in the name of Hector May located at Sterling Bank;

g) Any and all funds in account number 7800002292 held in the name of Hector May located at Sterling Bank;

h) Any and all funds in account number 324532011941 in the name of Hector May and Sonia May at KeyBank that exceed the sum of $38,666.

i) Any and all funds held in accounts in the name of Hector May or Sonia May, located at Securities America Inc., including without limitation accounts AEW-181480, 81802257301AKO, 81802257302AKO, RCT395730, STL158178, and any deferred compensation plans;

j) Any and all funds in account number 7800124919 held in the name of Sonia May located at Sterling Bank;

k) Any and all funds held in accounts in the name of Sonia May and Hector May located at Franklin Templeton Investor Services, LLC, including without limitation account 60160765368106011;

l) One Cartier 18KT Bracelet with diamonds;

m) One handmade 14KT yellow gold tennis bracelet;

n) One pair diamond earrings;

o) One 14KT white gold diamond tennis bracelet;

p) One pair Japanese cultured pearl and diamond earrings;

q) One 18KT white gold diamond neckless;

r) One pair 14KT white gold diamond earrings;

s) One 14KT white gold diamond stick pin;

t) One men's Rolex oyster perpetual datejust watch;

u) One ladies Rolex oyster perpetual datejust watch;

v) One pair of diamond and pearl earrings;

w) One natural Blackglama female mink jacket 28"
long;

x) One blush full fox skin jacket;

y) One blush dyed fox full skin headband;

z) One natural silver tip raccoon coat;

aa)    One natural Blackglama female mink jacket
51" long;

bb)    One natural Russian lynx vest;

cc)    One natural female mink coat with notch collar
rollup cuffs;

dd)    One silver cutlery set for twelve located at
the defendants residence in Orangeburg, NY;

ee)    One antique Grandfather clock located at the
defendants residence in Orangeburg, NY;

## Substitute Asset Provision

12.   If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due

diligence;

b.    has been transferred or sold to, or deposited
with, a third person;

c.    has been placed beyond the jurisdiction of the
Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section  853(p) and Title 28, United States
Code, Section 2461(c), to seek forfeiture of any other property
of the defendants up to the value of the above forfeitable
property.

            (Title 18, United States Code, Sections 981, 982;
             Title 21, United States Code, Section 853; and
             Title 28, United States Code, Section 2461.)


                        _____
                        GEOFFREY S. BERMAN
                        United States Attorney